MINNIE M. GARRISON, APPELLEE, V. HARRY H. EVERETT ET AL., DEFENDANTS: SULPHO-SALINE BATH COMPANY, APPELLANT.

FILED MAY 26, 1924. NO. 22787.

1. Master and Servant: VERDICT FOR EMPLOYEE AND AGAINST EMPLOYER. A verdict in favor of an employee and against the master will not be set aside as inconsistent, where there is evidence of negligence of other employees, not made defendants, sufficient to sustain the verdict.

2. Damages: INJURY: QUESTION FOR JURY. Where it is shown that plaintiff, nearly a year after injury, is still suffering in mind and body as a result of defendant's negligence, and other circumstances are in evidence warranting an inference that such conditions will continue for an indefinite period, it is not error to submit to the jury the questions of the continuance and permanence of the injuries, notwithstanding the fact that experts testify that they are unable to say whether or not the conditions are permanent.

3. Appeal: INSTRUCTIONS: HARMLESS ERROR. An instruction that the jury in assessing damages may consider "the future pain and deprivation of health" which plaintiff will undergo, "if any such they find," while not approved, is the substantial equivalent of an instruction that future injuries must be shown "with reasonable certainty." and, if error, was without prejudice, especially where the jury are required to allow only such damages as will compensate plaintiff for injuries actually sustained.

4. ———: ———: FAILURE TO REQUEST. Where a petition contains a general allegation of negligence and of a specific negligent act, and evidence of other negligent acts sufficient to sustain the verdict is received without objection, a judgment for plaintiff will not be reversed for failure of the court to instruct upon the

Garrison v. Everett.

law applicable to such other acts, where no such instruction is requested.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. *Affirmed.*

*Reavis & Beghtol* and *J. L. McPheely,* for appellant.

*W. B. Comstock* and *Tyrrell & Westover, contra.*

Heard before MORRISSEY, C. J., LETTON and GOOD, JJ., BLACKLEDGE and REDICK, District Judges.

REDICK, District Judge.

This action is brought by Minnie M. Garrison, the plaintiff, against the Sulpho-Saline Bath Company, a corporation, and Dr. Harry H. Everett, the operating surgeon, to recover damages occasioned by the negligence of the doctor in failing to secure a drainage tube by fastening one end of it to the dressing so as to prevent its slipping into the wound; and negligence in failing to discover and remove the drainage tube before allowing the wound to heal. The result was that the drainage tube, about eleven inches long, composed of rubber, slipped into the wound and remained there and was not discovered by the surgeon and nurses at the time the stitches were taken out, and the wound was closed and healed over with the tube remaining inside. The case was submitted to the jury, who found in favor of Dr. Everett and against the corporation in the sum of $6,500, and from the judgment rendered thereon the defendant appeals.

Four points are made by the defendant as grounds for reversal: (1) That the evidence does not sustain the verdict; (2) that the verdict is inconsistent upon the theory that the liability of the corporation depended entirely and exclusively upon the negligence of the operating surgeon; (3) that the district court, having excluded the Carlisle table of expectancy, erred in instructing the jury that they might consider whether the injuries of the plaintiff were temporary or permanent; (4) that the only injuries resulting were those attributable merely to a proper

performance of the operation, namely, adhesions of the intestines and other portions of the abdominal region.

Upon the first point the argument of appellant is: "That the inconvenience suffered by plaintiff was not due to leaving the tube in her body, in any degree, but was due entirely to the formations of adhesions which did not come, and could not come, from the tube, but which came as a natural result of her infected appendix. There is no evidence whatever that any of the trouble experienced by plaintiff resulted or could have resulted from the presence of this tube in the abdominal wall." We do not think the facts upon which this argument is based are the proper inferences from the testimony. The operation was for a pus appendix; that is, one which was inflamed to such an extent that pus was formed in considerable quantities. In such cases all the experts called agree that artificial drainage is necessary to carry off the pus and thus prevent infection. There is evidence that the purpose of inserting the tube was to secure proper drainage; that, where the tube disappeared entirely into the pelvic cavity and the wound healed over, all drainage would be stopped; that such treatment was improper; that plaintiff's appendix was badly inflamed; that inflammation produces serum, and serum produces fibrin, and that adhesions are the result of fibrin; that some adhesions are generally present in operations on a pus appendix; that where there is improper drainage there would be more adhesions; that irritation caused by the presence of the rubber tube in the body might cause adhesions. Defendant's contention that the adhesions in this case were solely the result of the operation and prior condition of the appendix cannot be sustained; at least it was a question for the jury. It further appears from the evidence for plaintiff that plaintiff's health prior to the operation was good, but that since then and up to the time of trial, January, 1922, she had lost weight, from 158 to 132 pounds, became weaker and more nervous, was sick, could not eat anything without vomiting, is on a milk diet, is in bed half the time, and suffers pain, complains of soreness through the stomach, and at times has swelling around the wound. An

X-ray examination in January, 1922, established the existence of adhesions "down in the right lower quadrant, or right lower abdomen, involving the terminal ileum, cæcum, and the ascending colon." The physicians who examined plaintiff attribute her present condition of health to these adhesions.

We think the evidence above summarized made a question for the jury and affords sufficient ground for the inference that with proper drainage a normal recovery would have resulted, but that the failure to provide proper drainage after the operation and permitting the wound to heal without removing the tube were the proximate cause of plaintiff's condition of ill health. °

As to the second point, there is no doubt but that upon the trial of the case plaintiff's principal reliance was upon the negligence of Dr. Everett, and with one exception (in the statement of the allegations of the petition) the instructions of the court have to do entirely with the negligence of Dr. Everett. If the only negligence charged was that of Dr. Everett, the inconsistency of the verdict is beyond dispute. Where the liability of the principal depends entirely upon the negligence of the named agent or employee, a verdict in favor of the employee and against the principal cannot be sustained. *Chicago, St. P., M. & O. R. Co. v. McManigal,* 73 Neb. 580; *Young v. Rohrbough,* 86 Neb. 279; *Forsha v. Nebraska Moline Plow Co.,* 89 Neb. 770.

It appears, however, that the allegations of the petition are sufficiently broad to let in evidence of negligence of other servants of the defendant corporation. After alleging negligence of the operating surgeon in failing to properly fasten the tube, paragraph 7 of the petition is as follows: "That the plaintiff remained at the said hospital and was treated by defendants continuously during said period of time in such an unskilful, careless, and negligent manner that the plaintiff was, and still is, caused to suffer great pain and anguish, * * * and the nurses, and physicians, and attendants employed by the said defendants were so incompetent, unskilful, and negligent that they failed to discover the cause of her sickness, pain, and suffering" so

that other physicians had to be employed. It appears from the evidence that a daily record is kept of the condition of the patient, and that when a drainage tube is inserted in the wound that fact is reported to the nurse in charge, whose duty it is to enter the fact upon the chart or report; that Dr. Everett instructed the nurse to record the fact of the insertion of the tube, but the nurse failed to make the record, with the result that, when Dr. Olney, the surgical assistant of Dr. Everett, an employee of defendant corporation and the physician in charge of the case after the operation, dressed the wound the following day and subsequently, he received no information from the chart or otherwise that a tube had been inserted, and did not discover its presence, but dressed the wound, and about eight days later removed the stitches, allowing the wound to heal. This evidence of negligence on the part of the nurse employed by defendant was sufficient to sustain a finding against the defendant corporation. If the chart had shown the insertion of the tube, Dr. Olney, who testifies that he worked from the chart, would in all probability have noticed its absence and taken proper steps to recover it and place it in proper position to perform its function.

Up to this point it would seem that the second proposition of the defendant is not well taken; but we must consider another factor. In the statement of the allegations of the petition, the court in its first instructions said: "She further avers that following said operation she was negligently and unskilfully treated and cared for by the defendants. And she says that by reason of the foregoing she incurred damages in the sum of $50,000, for which, with interest, she prays judgment." No other or further reference to this allegation is contained in the instructions; but, as before stated, the law of the case given by the court had sole reference to the alleged negligence of Dr. Everett. We are thus confronted with this situation: The petition contains the necessary allegations of negligence, the evidence is sufficient to support the verdict thereon, the court recites the allegations of the petition of the negligence of other servants as one of the grounds for recovery, but fails

to instruct the jury upon the law applicable to that particular phase of the case. In this situation, we are in considerable doubt whether the verdict should be sustained, but our conclusion is that it may be from the following considerations: While the evidence to support allegations as to the negligence of servants other than Dr. Everett appears to have been brought out upon the cross-examination of defendant's witnesses, it was received without objection (except where secondary evidence was called for). Neither party requested any instruction upon the law as applicable to this allegation. The evidence is practically undisputed that plaintiff suffered great pain and inconvenience and loss of ability to perform her ordinary duties as a housewife, and a clear case of liability is made against the defendant corporation. We are of the opinion that the error of the court, if any, in failing to instruct the jury as to the law applicable to this particular ground of recovery was without prejudice to the defendant, and that nothing would be gained by the reversal of the case upon this ground except to give the defendant another chance to escape a clear liability. On the whole, the case appears to have been presented fairly to the jury, and justice does not require another trial merely because the verdict may appear to be inconsistent as to one of the defendants.

Upon the third objection, it occurs to us that the Carlisle table is not the only evidence upon which a jury may base a finding of damages for a permanent injury. That question may be, and frequently is, submitted to the judgment of the jury without the table. The evidence upon the permanency of the injuries was indefinite, and perhaps the final effect of it is that the doctors were unable to say how long the adhesions would continue; but this uncertainty itself was proper to be considered by the jury with the other facts, and the verdict is not based upon any arithmetical calculation, as, for instance, where the loss of wages and ability to earn money during the expectancy of the plaintiff is involved; and, therefore, it appears to us that, while the evidence of the table might properly have been received in evidence, its exclusion did not withdraw

from the jury the question of the temporary or permanent
character of the adhesions, but that the question was prop-
erly presented to them for the exercise of their judgment
based upon all the evidence in the case. Dr. Olney testi-
fied for defendant that plaintiff made an uneventful recov-
ery from the operation, a little more rapid than the aver-
age, sat up the 9th day and was discharged the 12th. It
seems quite proper to conclude from the evidence that her
subsequent decline in health was due to the presence of the
tube in her body for 60 days, the stopping of the drainage
from the wound, and the consequent accumulation of pus
or serum which was not released until the tube was re-
moved. Her continued ill health up to the time of trial,
over ten months after the operation, in connection with
these other matters, furnished a reasonable ground upon
which the jury might base a finding as to the probable con-
tinuance of the conditions. The court did not err in sub-
mitting to the jury the question of the temporary or per-
manent character of plaintiff's injuries.

A further objection to the instruction on the measure of
damages is that it does not limit her recovery to the dam-
ages which might reasonably be expected to result from the
permanency of her injury. By the instruction the jury
were told that, "in arriving at the amount of her recovery,"
they should consider "the future pain and deprivation of
health that she will undergo, if any such you find, and give
her such a sum as will compensate her for her injuries
actually sustained."

The rule in this state is as stated in *Chicago, R. I. & P.
R. Co. v. McDowell*, 66 Neb. 170, cited by defendant, that
"compensation can be recovered for only such future dam-
ages as are shown with reasonable certainty," and the in-
struction complained of would have been more accurate if
it had stated that such damages must appear from the evi-
dence with reasonable certainty; but we think, the jury
being required to find from the evidence that plaintiff
would undergo such damages, together with the further
caution that they should compensate her only for damages
actually sustained, the elements of speculation and con-

jecture were eliminated and the instruction substantially correct. A requirement that she will suffer damages in the future is, as a matter of mere statement, a little more rigid than one that such fact appear with reasonable certainty.

As to the fourth point, the evidence is conflicting as to whether or not the presence of the rubber tube, which appears to have lodged between the abdominal wall and the exterior covering of the body, would tend to cause the formation of pus or inflammation causing adhesions. The undisputed evidence is that the case was one of a pus appendix, requiring artificial drainage, and the slipping of the tube inside and healing of the wound prevented proper drainage, so that two months after the operation, when the presence of the tube was discovered and the same was extracted, a quantity of serum was expelled from the wound, and it is fairly deducible from the evidence that such a condition would cause inflammation inducing the occurrence of adhesions. This was a question for the jury.

AFFIRMED.

Note—See Appeal and Error, 3 C. J. p. 854, sec. 756; 4 C. J. p. 1032, sec. 3014; Damages, 17 C. J. p. 1075, sec. 381 —Master and Servant, 26 Cyc. p. 1579.